IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Walter Glass, #366379, | ) | C/A No.: 1:20-1972-SAL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | AND ORDER |
| | ) | |
| Jasmine Hill, Tyatta Davis, and | ) | |
| Wali Khan, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this case, an incarcerated person killed his cellmate and brings claims against the on-duty correctional officers, seeking damages for $25,000 for mental anguish, being charged with the murder, and being placed in supermax.

Walter Glass ("Plaintiff"), proceeding pro se and in forma pauperis, filed this complaint for alleged violations of his civil rights against the following corrections officers at Broad River Correctional Institution ("BRCI"): Jasmine Hill ("Hill"), Tyatta Davis ("Davis"), and Wali Khan ("Khan") (collectively, "Defendants").[1] More specifically, Plaintiff brings suit pursuant to 42 U.S.C. § 1983 for deliberate indifference and cruel and unusual punishment, as well as for gross negligence. [*See* ECF No. 1 at 6].

---

[1] Plaintiff also named as a defendant corrections officer Cunningham ("Cunningham"). On January 29, 2021, Cunningham was dismissed from this

This case is before the court on Defendants' motion for summary judgment. [ECF No. 84]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 85]. Having been fully briefed [ECF Nos. 89, 90], the motion is ripe for disposition. Also before the court are Plaintiff's motions for summary judgment [ECF Nos. 75, 88], as well as his motions to appoint counsel, impose sanctions, and for discovery [ECF Nos. 66, 74, 82].

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), the case has been referred to the undersigned for all pretrial proceedings. Having carefully considered the record, the undersigned denies Plaintiff's motions to appoint counsel and for discovery, grants Plaintiff's motion for sanctions, and recommends the district judge grant Defendants' motion for summary judgment and deny Plaintiff's motions for summary judgment.

I.     Factual Background

At all times relevant, Plaintiff was incarcerated at BRCI.[2] On December 28, 2018, Plaintiff was seen by the psychological treatment team at the South Carolina Department of Corrections ("SCDC"). The following notes

---

case for Plaintiff's failure to prosecute. [*See* ECF No. 51].

[2] Plaintiff is currently housed at Perry Correctional Institution.

were recorded:

> Explanation: New Admit. Seen in treatment team. [Inmate ("I/M")] reportedly attempted hanging last night/this morning in the Wateree dorm. I/M reported he was experiencing commanding [auditory hallucinations ("AH")] which told him to kill his cellmate or something bad was going to happen to him. I/M reported he braided a rope and tied it to the ceiling and put it around his neck, then staff came around and saw him and he got down. I/M reported this is his 3 suicide attempt and the cause of them all have been due to auditory hallucinations. I/M reported his AH has worsen in the last week and a half as this is the approximate time of his wife's death.

[ECF No. 89-1 at 8]. Plaintiff was assessed having an "[u]nspecified mood [affective] disorder" and "[u]nspecified schizophrenia spectrum and other psychotic disorder" and was retained at the crisis stabilization unit ("CSU"). *Id.* at 9. On January 3, 2019, Plaintiff was discharged from CSU and assessed as "not in need of CSU or CI at this time." [ECF No. 1-1 at 4, *see also* ECF No. 89-1 at 10].[3]

Plaintiff was housed with Isaac Starke ("Starke"), and on January 6, 2019, Plaintiff provided the following voluntary statement concerning having killed Starke the night before:

> On 1-5-19 at approx. 7:30–8:30 p.m., I Walter Glass killed my roommate Isaac Star[ke]. We both suffer from schizophrenia; between him screaming and me suffering from the voices in my head, I snapped. I took a piece of sheet, wrapped it around his neck, slammed him to the floor, put my foot to the side of this head, and pulled until he neck broke and his throat crushed, and

---

[3] Plaintiff alleges in unverified complaint that he informed nurses he was still hearing voices when he was released from CSU. [ECF No. 1 at 4].

kept pulling until I felt his back snap. I picked him up and sat
him on the toilet. I waited till this morning and handed the C/O
Ms. Smith a note telling her I killed my roommate.

[ECF No. 84-2 at 4 (punctuation and spelling corrected); *see also id.* at 1 (note

referenced above); *id.* at 2, 5–6 (additional admissions of guilt)].

Plaintiff has submitted evidence from Leon Edwards ("Edwards"),

another person incarcerated at BRCI, that Edwards heard Plaintiff and

Starke inform Hill and Cunningham that they should not be housed together,

and that he "also overheard the two officers talking to each other saying that

inmate Glass stated he felt homicidal" and that "Starke said he felt suicidal."

[ECF No. 89-1 at 1].[4] Plaintiff has also submitted evidence that on the night

in question, he covered the flap to his cell so that corrections officers could

not look in, some of the Defendants did not properly check the cell as the

night progressed, and Khan and Davis were suspended for their negligence

regarding this incident. [*See* ECF No. 1-1 at 5–9, *see also* ECF No. 1 at 5].

II.    Discussion

A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled

---

[4] Plaintiff also alleges in unverified complaint that on January 4 and 5, 2019,
he and Starke informed Cunningham and Hill that Plaintiff would hurt
Starke, Plaintiff had threatened to kill Starke, Starke was suicidal and
needed to go to CSU, one of the men needed to be moved, Starke feared for

to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to

his life, and Plaintiff was homicidal. [ECF No. 1 at 4].

allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.    Analysis

1.    Eleventh Amendment Immunity

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. [ECF No. 1 at 6]. A civil action brought pursuant to 42 U.S.C. § 1983 provides a means to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States, but the statute is not, itself, a source of substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 imposes liability on any person who, under the color of state law, deprives another person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Doe v. Kidd*, 501 F.3d 348, 355 (4th Cir. 2007) (citing 42 U.S.C. § 1983). "Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has long held the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

A plaintiff "is not entitled to monetary damages under § 1983 against Defendants in their official capacities." *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (holding that Eleventh Amendment bars suits against non-consenting state, its agencies, and its officers acting in their official capacities)). However, suits for damages against state officials sued in their individual capacity are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.") (citation omitted).

Plaintiff's complaint alleges claims against Defendants in their official

capacities only. [*See* ECF No. 1 at 2–3]. Defendants are not subject to suit under § 1983 for claims against them in their official capacities, and the undersigned recommends the district judge grant Defendants' motion for summary judgment as to Plaintiff's federal claims. To the extent that Plaintiff intended to sue Defendants in their individual capacities, the undersigned addresses the claims below.

### 2.    Eighth Amendment Claims

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement, *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). "Gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (2003) (quoting *Farmer*, 511 U.S. 833).

However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To establish a claim under the Eighth Amendment, a prisoner must satisfy two elements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.*

(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a prisoner must present evidence that the prison officials had a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 297). That is, that the defendant acted with deliberate indifference.

To be deliberately indifferent, a prison official must "know of and disregard an objectively serious . . . risk of harm." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A showing of mere negligence does not qualify as deliberate indifference. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. *Id.* at 845; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (concluding that an officer who responds reasonably to a danger facing an inmate is not liable under a deliberate indifference standard, even if the officer could have taken additional precautions, but did not). This standard reflects prison officials' "unenviable task of keeping

[sometimes] dangerous [people] in safe custody under humane conditions[.]" *Farmer*, 511 U.S. at 845.

Under the qualified immunity defense, asserted here by Defendants, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever

order is appropriate in light of the circumstances of the particular case at hand. *Id.*

Defendants present the following primary argument in their motion for summary judgment:

> In this case, unlike *Farmer* or any of the other cases regarding a prison's duty to keep inmates free from violence, Plaintiff was not the one injured due to inmate violence. Rather, there is clear evidence that he was the aggressor. By Plaintiff's own sworn statements to SCDC officials, other inmates, and even the family of the deceased, he confessed to the murder and took responsibility for Isaac Starke's death. For that reason, even if Plaintiff could prove the two elements necessary to a failure to protect claim, Defendants would argue that there is nothing in failure to protect case law or §1983 that seeks to protect the perpetrator of inmate-on-inmate violence, and to extend our case law to the type of facts here would be improper. Put simpler, a plain reading of *Farmer* would show that a § 1983 claim must fail because there is no duty to protect an inmate from his own violent acts or tendencies.

[ECF No. 84-1 at 6 (citations to the record omitted)]. Plaintiff appears to agree in part, noting that the issues he is bringing "have not been challenged before," but arguing that according to SCDC's procedures, he should not have been housed with Starke, he tried to ask for help, and "[e]veryone has the right to protection, even from himself." [ECF No. 89 at 2–3].

The court need not resolve the issue as to whether the facts alleged, taken in the light most favorable to Plaintiff, show that Defendants' conduct violated a constitutional right, because, even if such a showing has been made, the parties agree, and the undersigned concludes, that any such

potentially violated constitutional right was not clearly established at the time of the alleged misconduct. In short, there is no indication on the record before the court that Defendants violated clearly-established law, where there is no indication "there existed either controlling authority—such as a published opinion of this Court—or a robust consensus of persuasive authority—that would have given the defendants fair warning that their conduct"—failure to protect Plaintiff from his own violent acts, "was wrongful." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (citations omitted); *see also cf. Garces v. Degadeo*, C/A No. 1:06-1038-JAT, 2010 WL 796831, at *4 (E.D. Cal. Mar. 5, 2010) (granting summary judgment as to plaintiff's deliberate indifference claim, stating "[b]ecause Plaintiff willingly engaged in the fight with his cell mate, his own actions were the proximate cause of any injury. Is Plaintiff arguing that Defendants had a duty to protect him from himself and his own violent actions? If so, the Court cannot agree," *aff'd*, 475 F. App'x 160 (9th Cir. 2012); *Farley v. Virga*, C/A No. 2:11-1830 KJM KJN, 2013 WL 3992392, at *6 (E.D. Cal. Aug. 1, 2013) ("plaintiff cannot demonstrate that prison officials were deliberately indifferent to a substantial risk of harm if plaintiff initiated the risk of harm").[5]

---

[5] The instant case stands in contrast to Eighth Amendment precedent addressing deliberate indifference claims based on self-harm. *See, e.g., Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001) ("A substantial risk of suicide is certainly the type of 'serious harm' that is contemplated by the first prong of

Additionally, to extent Plaintiff is trying to state claims and allegations concerning the injury to Starke, Plaintiff does not have standing to assert claims on behalf of other inmates. *See Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977) (pro se inmate does not have standing to sue on behalf of another); *see also McClurkin v. Perry Corr. Inst.*, C/A No. 2:12-2796-RMG-BHH, 2012 WL 5876238, at *2 (D.S.C. Oct. 10, 2012) ("Plaintiff uses terms such as 'we' and 'against us inmates,' but Plaintiff cannot represent others"), report and recommendation adopted, C/A No. 2:12-2796-RMG, 2012 WL 5876212 (D.S.C. Nov. 20, 2012).

Finally, to the extent that Plaintiff bases his claims on Defendants housing him with Starke, even though they allegedly should not have been housed together based on SCDC policy, it is well established that a prisoner does not have a constitutional right to a particular custody, security, or classification status; nor does an inmate have a constitutional right to his choice of roommate. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or

*Farmer.*").

custody status [a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.") (citations omitted)); *Williams v. Bochenek*, C/A No. 3:00-2708-24, 2001 WL 34085614, at *4 (D.S.C. May 24, 2001) ("An inmate has no constitutional right to the roommate of his choice.") (citing *Harris v. Greer*, 750 F.2d 617 (7th Cir. 1984)).

Accordingly, the undersigned recommends the district judge find Defendants entitled to qualified immunity and grant their motion for summary judgment as to Plaintiff's federal claims. For the same reasons, the undersigned recommends the district judge deny Plaintiff's motions for summary judgment.[6] To the extent Plaintiff alleges any state law claims, the undersigned recommends the district judge decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(3).

### 3.     Plaintiff's Motion to Appoint Counsel

There is no right to appointed counsel in § 1983 cases. *Cf. Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). While the court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(e)(1); *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971), such

---

[6] Plaintiff, in his motions for summary judgment, does not address the merits of his claims, but argues instead that he is entitled to summary judgment for Defendants' failure to adequately and timely participate in this case. [*See* ECF Nos. 75, 88]. However, motions for summary judgment are not the

appointment "should be allowed only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Plaintiff has not shown any exceptional circumstances exist in this case. After a review of the file, the court has determined there are no exceptional or unusual circumstances presented that would justify the appointment of counsel, nor would Plaintiff be denied due process if an attorney were not appointed. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984). Therefore, Plaintiff's motion to appoint counsel is denied.

### 4.    Plaintiff's Motions for Sanctions and Discovery

Discovery has been contentious throughout this case. On February 1, 2021, the court ordered Defendants to produce documents requested by Plaintiff, which request was construed as Plaintiff's First Request for Production of Documents. [ECF No. 54 at 2].[7] The order directed Defendants to respond to the discovery requests no later than March 2, 2021. *Id.* On April 8, 2021, Plaintiff filed a motion to compel alleging Defendants had failed to respond. [ECF No. 60]. Defendants failed to file a response to Plaintiff's motion to compel.

On April 23, 2021, the court granted Plaintiff's motion to compel,

---

proper method by which to assert these arguments.

[7] Plaintiff's motion to produce requested a very limited production of documents from Defendants of (1) a copy of the logbook dated January 5, 2019, from the area of BRCI Plaintiff was housed on that day, (2) statements from Hill and Cunningham, and (3) a copy of "inmates wardens jacket." [ECF No. 42].

directing Defendants to provide responses to the discovery requests, additionally including Plaintiff's request for his medical records, by May 7, 2021. [ECF No. 61].

On May 17, 2021, Plaintiff filed another motion to compel, which the court construed as a motion for sanctions. [ECF No. 67]. On June 14, 2021, the court issued an opinion and order, granting Plaintiff's motion for sanctions, stating as follows:

> Defendants are in violation of the Magistrate Judge's discovery order. If, as Defendants assert, they were having trouble obtaining the documents, Defendants could have moved the Court to extend the deadline for good cause. Fed. R. Civ. P. 6(b). Instead, Defendants failed to comply with the discovery order. Accordingly, the Court will impose sanctions for failure to comply with a court order pursuant to Fed. R. Civ. P. 37(b)(2).
>
> Rule 37(b)(2)(A)(iv) provides that the Court may stay further proceedings until a discovery order is obeyed. Proceedings in this action are stayed for 30 days or until Defendants comply with the Magistrate Judge's order, ECF No. 61. If Defendants fail to comply within thirty days, the Court will prohibit Defendants from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence pursuant to Rule 37(b)(2)(A)(ii).

[ECF No. 71 at 5].

On July 14, 2021, Defendants filed a status report with regards to the discovery requests and the court's deadline. [ECF No. 73]. The status report stated in part as follows:

> On May 13, 2021, Defendant produced all the documents it could, save for the two statements requested from individual

Defendants. Those two statements, if they did exist, were being held by SCDC Police Services due to the nature of Plaintiff's criminal charges. Defendant also believed there may be additional medical documents. At the time of Defendants Response in Opposition on May 27, 2021, Defendant still needed to confirm the existence or non-existence of those documents. Defendant would offer to the court at this time, that it has viewed the investigative report and no statements from Officers Hill or Cunningham exist in the file. Furthermore, Defendant has produced the entire Warden's Jacket and Central File of Plaintiff, which would contain any incident reports created regarding Plaintiff's actions in SCDC. Additionally, SCDC contacts have made a diligent search of all records and confirmed no other statements exist. Finally, Defendant has confirmed with SCDC that the medical file produced was everything it had and therefore the files produced on May 13, 2021, were complete. These documents were printed and mailed to Plaintiff by cover letter.

For the foregoing reasons, Defendant would certify to the Court that it has produced all documents requested by Plaintiff and has therefore complied fully with the Order of June 14, 2021.

[ECF No. 73, *see also* ECF Nos. 79, 83].

In his motion for sanctions filed July 22, 2021, Plaintiff references the ongoing discovery disputes between the parties and seeks reimbursement for the cost of copying his mental health records. [*See* ECF Nos. 74, 74-1][8]. In his motion for discovery filed August 20, 2021, Plaintiff argues Defendants have failed to produce the following requested discovery: the logbook from January 5, 2019, statements from Defendants, and Plaintiff's psychiatric medical file,

---

[8] Plaintiff has submitted to the court an invoice for $245, indicating this invoice represents the cost to Plaintiff for copying the 469 pages on his medical records. [*See* ECF No. 74-1]. The invoice is not dated. *See id.*

again stating he had to obtain the medical records on his own and that Defendants should have to reimburse him for the cost of copying the records. [*See* ECF No. 82].

Although Defendants have represented that Defendants' statements Plaintiff seeks do not exist, and Plaintiff's medical file has been copied and produced to Plaintiff on May 13, 2021, Defendants have represented to the court that in the alternative to denying Plaintiff's motion for sanctions, "Defendant and its undersigned counsel, due to some of the delays in the discovery process, would be amenable to waiving any internal fees charged to Plaintiff." [ECF No. 79 at 2].[9]

Defendants have also indicated to the court, in response to Plaintiff's instant motion for discovery, that they have not produced the logbook from January 5, 2019. [*See* ECF No. 83 at 2]. Although Defendants have been on notice starting December 3, 2020, that Plaintiff sought this logbook [*see* ECF No. 42], Defendants now inform the court for the first time on September 3, 2021, as follows:

> Defendants in its responses objected to producing logbooks . . . . Defendants submit that the information contained in the logbooks regarding a myriad of issues including security matters,

---

[9] Although Defendants have indicated to the court that they have produced Plaintiff's complete medical file [*see* ECF No. 73], Defendants do not specifically address Plaintiff's argument that he had to spend $245 to make copies of his records, nor Plaintiff's argument that the records he paid to have copied have not been produced by Defendants. [*See* ECF Nos. 79, 83].

counts, and confidential information pertaining to other inmates should not be produced to the Plaintiff.

[ECF No. 83 at 2]. The undersigned notes that Defendants' responses to Plaintiff's discovery requests have not been submitted to the court, beyond the cover page. [*See, e.g.*, ECF No. 73-2].

Defendants have repeatedly failed to timely participate in discovery in this case. The undersigned accepts Defendants' invitation to grant Plaintiff's motion for sanctions and award him the cost of his copying fees in the amount of $254, directing these fees be waived or reimbursed, as applicable.

However, Plaintiff's motion for discovery is denied. Although the court is troubled by Defendants' failure to timely inform the court as to their objections to Plaintiff's request for the January 5, 2019 logbook, Defendants have provided unrebutted arguments that the information sought implicates security and confidentiality issues. *See, e.g., Ham v. Ozmint*, C/A No. 6:10-1095-DCN-KFM, 2010 WL 5641544, at *1 (D.S.C. Aug. 27, 2010) ("The plaintiff also seeks certain logbooks, which the defendants object to producing on the ground that the information contained therein may compromise institutional security [at Lee Correctional Institution] if divulged. This court has reviewed the defendants' responses and objections and finds that the defendants have adequately responded. Accordingly, the motion to compel is denied").

III.    Conclusion

For the foregoing reasons, the undersigned denies Plaintiff's motions to appoint counsel and for discovery [ECF Nos. 66, 82], grants Plaintiff's motion for sanctions [ECF No. 74], awarding him the cost of his copying fees in the amount of $254, and recommends the district judge grant Defendants' motion for summary judgment [ECF No. 84] and deny Plaintiff's motions for summary judgment [ECF Nos. 75, 88].

IT IS SO ORDERED AND RECOMMENDED.

November 10, 2021                           Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).